## HERMAN FRY

*v.*

## HENRIETTA RADZINSKI *et al.*

*Opinion filed February 21, 1906.*

1. GARNISHMENT—*judgment against garnishee may be rendered at term subsequent to judgment in attachment.* A judgment against the garnishee, either in 'favor of the plaintiff in the attachment suit or of the adverse claimant, may be rendered at a term subsequent to the rendition of the attachment judgment.

2. SAME—*adverse claimant may interplead after judgment in attachment.* An adverse claimant may interplead in a garnishment proceeding after the term at which the attachment judgment was rendered and before the judgment is rendered against the garnishee, if he had no notice or knowledge of the attachment proceeding until after the term at which the attachment judgment was rendered. (*Juilliard & Co.* v. *May,* 130 Ill. 87, and *Springer* v. *Bigford,* 160 id. 495, qualified.)

3. INJUNCTION—*when bill to enjoin collection of a judgment against garnishee is defective.* A bill to enjoin collection of a judgment against a garnishee in attachment which alleges want of notice by complainant until after the attachment judgment was rendered, is defective in failing to allege such want of notice continued until after the expiration of the term at which the judgment was rendered against the garnishee.

4. SAME—*appeal from interlocutory order granting injunction does not remove case from lower court.* An appeal from an interlocutory order granting an injunction does not remove the cause from the trial court, and the latter may, upon dissolution of the injunction by the Appellate Court, take steps to assess damages without the filing of any mandate, since section 83 of the Practice act, requiring a mandate to be filed and notice to be given before the cause is re-instated, applies only where the appeal is from a final judgment.

5. SAME—*lower court may assess damages though the Appellate Court dissolves injunction.* A court of chancery may hear evidence and assess damages, under section 12 of the Injunction act, notwithstanding the injunction is dissolved by the Appellate Court on appeal, instead of by the court of chancery itself.

6. SAME—*when assessment of damages is not premature.* When an injunction is the only relief sought and it is dissolved upon mo-

tion, an assessment of damages at once is not premature, where the court at the same time sustains a demurrer to the bill for want of equity upon its face, and, upon the defendant electing to abide by his demurrer, dismisses the bill.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This is a bill, filed in the circuit court of Cook county on April 6, 1903, by appellant against the appellees as defendants, asking for an injunction, restraining Henrietta Radzinski from collecting two judgments, recovered by her against the New York Life Insurance Company, as garnishee, in two attachment suits, numbered 172,898 and 180,-265, and that the New York Life Insurance Company be restrained from paying out and disposing of any money in its possession, claimed to be due on the policy of insurance No. 168,588, until the further order of the court; and that, upon final hearing, said insurance company might be decreed to deliver to appellant whatever sums of money might be found to be due on the policy of insurance, etc. On April 9, 1903, an injunction was granted substantially in accordance with the prayer of the bill upon the filing of a bond in the penal sum of $8250.00. A motion was made by Radzinski to dissolve the injunction; and on April 24, 1903, this motion was by agreement referred to a master in chancery to hear and determine the same, and report his decision thereon. On April 29, 1903, the master made his report, recommending that the motion to dissolve theretofore made be overruled for the present, and that the ultimate ruling thereon be reserved until the final hearing of the whole matter. On April 30, 1903, an order was entered, denying the motion to dissolve the injunction and approving the report of the master. Thereupon the appellee, Radzinski, took an appeal from the interlocutory order, refusing to dissolve the injunction,

and confirming the master's report, to the Appellate Court. The Appellate Court first affirmed the order of the circuit court, but subsequently granted a rehearing, and on January 19, 1904, reversed the order of the circuit court granting the injunction. The appeal bond, upon the appeal to the Appellate Court from said interlocutory order, was filed on May 1, 1903, in the circuit court. On May 7, 1903, appellee, Radzinski filed a general demurrer to the bill, and on the same day the New York Life Insurance Company filed a general demurrer to the bill.

On March 8, 1904, the cause came on to be heard before the circuit court upon the motion of appellee, Radzinski, to assess her damages on the dissolution of the injunction; and also at the same time the cause came on for hearing upon the demurrers filed to the bill; and the court, thereupon, rendered a decree, adjudging the damages, exclusive of the judgment enjoined and of the costs assessed, at the sum of $415.00, and ordered judgment for that amount with execution therefor; and, after the damages were so assessed, the court sustained each of said demurrers, whereupon the appellant, complainant below, elected to stand by his bill; and it was, therefore, decreed that the bill be dismissed for want of equity, and that appellees recover their costs from appellant. Thereupon, appellant prayed an appeal to the Appellate Court. The Appellate Court affirmed the decree entered by the circuit court in March, 1904, and the present appeal is prosecuted from such judgment of affirmance.

The bill alleges that, on September 15, 1896, Frederick H. Franke and Adolphine Franke, his wife, delivered to the appellant a policy of insurance, issued on the life of Frederick Franke by said insurance company, No. 168,588, as security for $5000.00, loaned by the appellant to Frederick Franke; that, at the time of such delivery, it was agreed by Franke and his wife that appellant should hold said policy as security for said loan, until the payment of the same, or until the policy should become due; that afterwards, on Sep-

tember 9, 1897, Franke and wife executed and delivered to the appellant a written assignment of said policy, a copy of which said written assignment is attached to the bill, and written upon it are the words: "Received, Dec. 21, 1897, Home Office;" that appellant ever since such delivery has remained in possession and control of said policy; that the same has not been redeemed by Franke, nor has the money so loaned been re-paid to appellant, but, with interest, is still due; that, on July 15, 1897, appellee, Radzinski, commenced an attachment suit in the circuit court of Cook county to recover $2160.00, and caused an attachment writ to be served on said insurance company as garnishee; that, on August 5, 1897, the insurance company answered, and admitted that it had issued the policy on Franke's life, and that, by the terms thereof, insurance would mature and become payable on February 26, 1903, and then be of the value of about $4150.00, copy of which answer is attached to and made a part of the bill; that, on June 6, 1900, judgment was rendered by default against Franke and wife in said attachment suit for $2520.00; that, on June (January) 20, 1898, Radzinski began another suit in attachment against the Frankes to recover $2160.00, which attachment writ was served on said insurance company as garnishee, and afterwards on February 28, 1898, the insurance company filed its answer, but it is alleged in the bill that said answer was not on file, and could not be found; that, on June 7, 1900, judgment was rendered by default against the Frankes in said attachment suit for $2520.00

The bill then alleges that the insurance company neglected, in its answer in the last attachment suit, to show that notice of an assignment of said policy was served on it September 9, 1897, but alleges that the insurance company had knowledge of said assignment, and refers to the copy thereof attached to the bill; that on April 3, 1903, the New York Life Insurance Company filed an amended answer as garnishee in said attachment suits, copies of which are attached

to and made a part of the bill; that, on April 3, 1903, judgment was rendered against the insurance company in each of said attachment suits, ordering it to pay over and deliver to Radzinski money and premiums due on said policy, which judgment was continued, with leave to the company to show cause within five days why it should not stand. The bill then alleges that appellant had and still holds a valid and prior lien on said policy, so attached by Radzinski in said attachment suit, and in equity and good conscience ought to be awarded the premiums due thereon; that appellant "had no knowledge of a rendition of the judgments in said attachment suits against Frederick Franke and Adolphine Franke, until long after the term of court, at which the said judgments were rendered, had passed, and is, and was, therefore, by reason thereof, precluded from coming into court and setting up his claim, by interpleader or otherwise in said attachment suits, for the purpose of defending his rights and claims to the premiums, now due on said policy of insurance." The bill further alleges that the complainant therein is without a legal and adequate remedy at law to establish his claim to the premiums due and to become due on the policy, and has been without the same ever since he had notice of the judgment in the attachment suit, and is powerless to prevent in any legal proceedings the collection of the judgments against said garnishee.

The answer of the insurance company as garnishee in the attachment suits, filed in August, 1897, admits the issuance of the policy, amounting to $5000.00 on the ten-payment life twenty-year tontine plan, annual premium $239.90; that premiums were paid up to and through February, 1893, at which time it became a paid up policy for $5000.00 in case of death; that the policy is assigned on the books of the insurance company by F. H. Franke to Adolphine Franke, his wife, and by the terms thereof the tontine benefits revert to the insured in the event of the prior death of Adolphine Franke; that there is no record on file of any other assign-

ment; that the policy will become due at the death of Franke before the end of the tontine period, which is 1903; that the cash value would be $4150.00.

The amended answers of the insurance company as garnishee, made April 1, 1903, in both attachment suits, set up that, since the filing of the former answer by the insurance company, said policy has matured, and the cash value of the same is $4151.95, which the company holds ready to pay to any party entitled to it; that on April 1, 1903, the company was served with a notice by appellant that heretofore, to-wit, on September 15, 1896, the Frankes assigned and delivered to Fry said policy as security for a loan, and that, afterwards on September 9, 1897, the Frankes executed and delivered to Fry a written assignment; the terms of which said notice are set forth in the amended answer. The garnishee then states in its answer that it holds said money for said Fry as assignee, and insists that it has not in its possession any moneys or other property, belonging to either of the said Frankes, subject to the judgment of the court.

WILLIAM E. HUGHES, for appellant.

NEWMAN, NORTHRUP, LEVINSON & BECKER, C. E. CLEVELAND, EDWARD O'BRYAN, and WILLIAM N. MARSHALL, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first point made by the appellant is, that the circuit court erred in sustaining the general demurrers to the bill, and dismissing the same for want of equity.

The controversy in the case is as to the money due upon the policy of insurance issued by the New York Life Insurance Company on February 26, 1883, upon the life of Frederick H. Franke. Appellant claims that the money should be paid to him, because the policy of insurance was pledged

to him as collateral security for a loan. The appellee, Henrietta Radzinski, claims that she is entitled to the money because of the attachment suits, begun by her against Franke and his wife, in which she obtained judgments for the amounts due her against Franke and his wife, and also obtained judgments against the New York Life Insurance Company as garnishee in said attachment suits.

The hearing upon the merits was had upon demurrers to the bill, resulting in a dismissal of the same for want of equity, and, therefore, the allegations of the bill are admitted to be true, and are treated as true in the consideration of the case. After Radzinski commenced her attachment suits and garnisheed the insurance company, appellant, claiming the money due on the policy, did not intervene or interplead in the attachment suits. Section 29 of the Attachment act provides that "in all cases of attachment, any person, other than the defendant, claiming the property attached, may interplead, verifying his plea by affidavit, without giving bail, but the property attached shall not thereby be replevied; and the court shall immediately (unless good cause be shown by either party for a continuance) direct a jury to be empaneled to inquire into the right of property." (1 Starr & Cur. Ann. Stat.—2d ed.—p. 462.) Sections 11 and 12 of the Garnishment act also provide for the appearance of a claimant to the fund for the purpose of maintaining his right thereto. (2 Starr & Cur. Ann. Stat.—2d ed.—p. 2062.)

In his bill the appellant gives as a reason why he did not interplead in the attachment suits that he had no knowledge of a rendition of the judgments therein against the debtors "until long after the term of court, at which said judgments were rendered, had passed." It is alleged in the bill that, by reason thereof, appellant was precluded from coming into court, and setting up his claim, by interpleader or otherwise, in said attachment suits for the purpose of defending his rights and claims to the money due on said policy of insurance. The question then arises whether appellant was justi-

fied in failing to interplead in the attachment suits for the
reason stated by him, and whether or not, having failed so
to interplead, he now has a right to come into a court of
equity, and enjoin the collection of the judgments against
the garnishee by the attaching creditor.

In *Juilliard & Co.* v. *May,* 130 Ill. 87, we said (p. 95) :
"We think that, in analogy to replevin in respect to personal
property, which lies after judgment rendered against the
defendant in attachment awarding sale, the remedy by inter-
pleader should be held to lie, in respect to both personal and
real property, after such judgment, but that, in the nature of
things, and from the necessity of the case, it would have to
be interposed while the attachment suit was still *in fieri,*
which would be during or before the term, at which final
judgment is entered against the defendant in the attach-
ment." In *Springer* v. *Bigford,* 160 Ill. 495, the statement
above quoted from the *May case* was approved and en-
dorsed. While, however, it was said in the *May case* that
the interpleader should be interposed in the attachment suit
during or before the term, at which final judgment is en-
tered against the defendant in the attachment, it was at the
same time said: "There is no legal inconsistency and in-
congruity that the court should render judgment against an
attachment defendant, and order a sale of the property levied
upon by the writ, and at a subsequent time or term adjudge
such property to belong to a person other than such defend-
ant, and order its release." That is to say, the claim of
ownership made by an outside party to the fund or property
in the hands of the garnishee may be decided after judgment
is rendered in the attachment suit against the judgment
debtor. In other words, the judgment against the garnishee,
either in favor of the plaintiff in the attachment suit or of
the adverse claimant, may be rendered after the judgment in
the attachment suit and at a subsequent term. In the case
at bar, the judgments against the Frankes in the attachment
suits were rendered on June 6 and 7, 1900, and were judg-

ments by default. But the judgments in favor of Radzinski
against the New York Life Insurance Company as gar-
nishee were not rendered until April 3, 1903, nearly three
years after the judgments against the attachment debtor
were rendered. The act in regard to garnishment applies,
in many of its provisions, to garnishees summoned in at-
tachment proceedings, although the Garnishment act has
more particular reference to proceedings after judgment,
when execution is returned "no property found." For in-
stance, section 5 of the Garnishment act begins as follows:
"When any person is summoned as a garnishee upon any
process of attachment or garnishee summons issued out of
a court of record, the plaintiff shall  *  *  *  exhibit and
file all and singular, such allegations and interrogatories
in writing," etc.    (2 Starr & Cur. Ann. Stat.—2d ed.—
p. 2056.) Section 8 of the Garnishment act begins as fol-
lows: "When any person shall have been summoned as a
garnishee upon any attachment or other writ issued out of
any court of record," etc. (Ibid. p. 2060.) Section 10 of
the Garnishment act is as follows: "No final judgment shall
be entered against a garnishee in any attachment proceeding
until the plaintiff shall have recovered a judgment against
the defendant in such attachment." (Ibid. p. 2062.) There-
fore, the judgment against the garnishee is necessarily
recovered subsequently to the rendition of the judgment
against the attachment debtor.

The appellant in his bill only alleges that he had no
knowledge of the judgments in the attachment suits against
the Frankes until long after the term of court, at which said
judgments were rendered, had passed. That is to say, he
had no knowledge of the rendition of these judgments until
long after June 6 and June 7, 1900. It is not, however,
alleged in the bill that he did not have knowledge of the
attachment proceedings, or of the attachment judgments,
before the rendition of the judgments against the insurance
company, as garnishee, on April 3, 1903. The plain infer-

ence from the allegations of the bill is that, at some time after June, 1900, and before April 3, 1903, he did have knowledge of the attachment proceedings. The rule that the interpleader could only be interposed while the attachment suit was still *in fieri,* "which would be during or before the term, at which final judgment is entered against the defendant in the attachment," could only be applicable in cases where the party, having a right to interplead, had notice or knowledge of the attachment proceeding. He could not interplead during or before the term, at which the final judgment was entered against the defendant in the attachment, if he had no notice or knowledge whatever that an attachment proceeding was pending. This question did not arise in the *May case,* because, there, the interpleader was filed at the same term, in which the judgment against the attachment debtor was rendered. Nor did it arise in the case of *Springer* v. *Bigford, supra,* because, there, the interpleader, although interposed after the judgment against the attachment debtor, was so interposed at the same term at which the judgment was rendered. Therefore, in the *May* and *Bigford cases,* the adverse claimant, exercising the right to interplead, had notice or knowledge of the attachment proceeding before the expiration of the term, at which the judgment against the defendant in attachment was rendered. Here, the allegation which is admitted by the demurrer to be true, is that appellant, the adverse claimant, had no notice or knowledge during or before such term.

That notice or knowledge on the part of the adverse claimant is material appears from the language of sections 11 and 12 of the Garnishment act. Section 11 is as follows: "If it appears that any goods, chattels, choses in action, credits or effects in the hands of a garnishee are claimed by any other person by force of an assignment from the defendant or otherwise, the court or justice of the peace shall permit such claimant to appear and maintain his right. If he does not voluntarily appear, notice for that purpose shall be

issued and served on him in such manner as the court or justice shall direct." (2 Starr & Cur. Stat.—2d ed.—p. 2062.) Section 12 is as follows: "If such claimant appears he may be admitted as a party to the suit, so far as respects his title to the property in question, and may allege and prove any facts not stated nor denied by the garnishee, and such allegations shall be tried and determined in the manner hereinbefore provided. If such person shall fail to appear after having been served with notice in the manner directed, he shall nevertheless be concluded by the judgment in regard to his claim." (Ibid. 2062.) These sections expressly provide that, when it appears to the court that the money or effects in the hands of the garnishee are claimed by a third person by virtue of an assignment by the debtor, such third person can either come in voluntarily, or, if he does not do so, he must have notice. The judgment against the garnishee is not conclusive as to him, unless he has failed to interplead after having had notice. In the case at bar, the defect in the bill of the appellant is, that he does not state, that he did not have notice before the judgments against the garnishee were rendered, or did not have notice before the expiration of the term at which such judgments were rendered. The amended answers of the garnishee were filed on April 1, 1903, or April 3, 1903. In these amended answers the garnishee set up the fact that it had received notice of the assignment of the policy to appellant. Thereupon the appellant was entitled to have notice and to be brought into court to make known his claim to the fund in question. It does not appear, so far as the bill in the case shows, that he did not have notice after the filing of the amended answers, and if he did have such notice, it was his duty to interplead in the attachment proceeding, and make known the nature of his claim to the fund. The first day of the March term, 1903, of the circuit court of Cook county was March 16, and the last day of said term was April 18. Of this the court takes judicial notice. The judgments

against the insurance company were rendered on April 3, and the present bill of complaint was filed on April 6, twelve days before the expiration of the March term. It follows, therefore, that appellant had notice of the rendition of the judgments against the garnishee in the attachment proceedings before the expiration of the term, at which the judgments against the garnishee were rendered. But neither he, nor the garnishee, nor the attachment debtors, nor the plaintiff in the attachment suits, moved to set aside the judgments against the garnishee, or either of them, or made any effort to appeal therefrom. The bill of the appellant was subject to demurrer, because it did not negative notice on his part before or during the term at which the judgments against the garnishee were rendered, and did not allege that no effort was made to set aside the judgments against the garnishee, or to permit him to come in and set up his claim to the fund.

It is alleged in the bill that in 1897, when the New York Life Insurance Company as garnishee filed its answers in the attachment proceedings, it had knowledge that the Frankes had assigned the insurance policy to the appellant as security for a loan made by the latter. If this allegation is true, then the insurance company, as garnishee, should have set up the fact of such assignment in its answers, and this would have led to the taking of steps to give the appellant notice, and to enable him to come in and interplead. If it be true that appellant was excusable for not interpleading because the term, at which the judgment against the attachment defendant was rendered, had passed, then he would have a remedy at law against the insurance company for its failure to refer to the assignment in question in its answers. In 14 American and English Encyclopedia of Law (2d ed. p. 866,) it is said: "A garnishee, who has notice before answer that the defendant in the action had assigned the debt to another before the process of garnishment was served, must disclose in his answer the fact, that such assignment

had been made, and if he fails to do so, a judgment, charging him as garnishee, will be no defense to an action against him by the assignee of the debt. And where he does not receive such notice until after he has answered, he should at once bring the matter to the attention of the court by supplemental answer." Our statute provides that, when it appears that any third person has a claim to the fund in the hands of the garnishee, notice to such claimant, if he does not appear voluntarily, shall be issued and served upon him in such manner as the court shall direct. The amended answers of the garnishee do show the fact of the pledge of the policy to the appellant, but the bill does not state that notice was not issued and served upon the appellant by the direction of the court. If such notice had been served upon him, it was his duty to interplead, even though the term had passed, at which the judgment against the attachment debtor had been rendered. (14 Am. & Eng. Ency. of Law,—2d ed. —pp. 866, 867, 906-909.)

There is nothing, either in the Attachment act or in the Garnishment act, which provides that the interpleader shall be interposed at any particular time. Sections 11 and 12 of the Garnishment act, which provide that notice must be given to the adverse claimant, do not say that said notice may not be given after the judgment against the attachment defendant, and after the term has passed, at which such judgment has been rendered. The judgment against the garnishee must, by the terms of the statute, be subsequent to the judgment against the attachment debtor. The judgment against the garnishee cannot be rendered, until the issue, made by the interpleader by the adverse claimant, has been disposed of, and, therefore, the question, whether the claim made by the interpleader is valid or not, may of necessity be decided after the term has passed, at which the original attachment judgment was rendered. We are, therefore, of the opinion that it was not sufficient for appellant to allege in his bill that he had no knowledge of the attachment

before or during the term, at which such judgments were rendered, but he should have alleged that he had no knowledge or notice before the expiration of the term, at which the judgments against the garnishee were rendered. The cases of *Juilliard & Co.* v. *May,* and *Springer* v. *Bigford, supra,* must be so qualified, as that the holding therein made shall apply only to cases, where the adverse claimant has notice or knowledge of the attachment proceeding or judgment before or during the term, at which such judgment is rendered. For the reasons above stated, the court committed no error in sustaining the demurrers to the appellant's bill.

*Second*—The next and only other question, presented by the record, relates to the assessment of damages, alleged to have been suffered by the appellee upon the dissolution of the injunction.

The first contention on the. part of the appellant upon this branch of the case is, that the circuit court had no jurisdiction to determine the claim for an assessment of damages on the dissolution of the injunction, awarded by the circuit court. The basis of this contention is, that an appeal was taken to the Appellate Court from the order, granting the injunction; that such appeal removed the cause from the circuit to the Appellate Court; that, when the Appellate Court reversed the order granting the injunction, and dissolved the injunction, a mandate should have been filed in the circuit court before any proceedings were taken to assess damages; but no mandate was filed. Section 83 of the Practice act provides that, "when any cause or proceeding either at law or in chancery is remanded by the Supreme Court or Appellate Court, as the case may be, for a new trial or hearing by the court, in which such cause was originally tried, the Supreme Court, or Appellate Court, as the case may be, shall issue its mandate, reversing and remanding such cause directly to such trial court; and, upon a transcript of the order of the Supreme Court, or Appellate Court, as the case may be, remanding the same being filed in the

court, in which such cause was originally tried, and not less than ten days' notice thereof being given to the adverse party or his attorney, the cause or proceeding shall be re-instated therein." (3 Starr & Cur. Ann. Stat.—2d ed.—p. 3111.) Section 83 applies to a case, where a final judgment has been rendered, and has no application to such a case as the one at bar. When the appeal is from a final judgment, the case is taken out of the circuit court, and removed to the reviewing court, and is no longer on the docket of the circuit court, but the present appeal is from an interlocutory order granting an injunction. The statute, that provides for an appeal to the Appellate Court from an order granting an injunction, contains the following provision: "The force and effect of such interlocutory order or decree, and the proceedings in the court below, shall not be stayed during the pendency of such appeal. * * * Upon filing of the record in the Appellate Court the same shall there be at once docketed and shall be ready for hearing under the rules of said court, taking precedence of other causes in said court; upon such appeal the Appellate Court may affirm, modify or reverse such interlocutory order or decree, and shall direct such proceedings to be had in the court below as the justice of the case may require." (3 Starr & Cur. Ann. Stat.—2d ed.— p. 3171.) It thus appears that the appeal from the interlocutory order, granting the injunction, did not remove the case from the circuit to the Appellate Court, but the case still remained on the docket of the circuit court, and, therefore, there was no occasion for any proceedings to re-docket or re-instate it.

It is also claimed by the appellant, that damages can only be assessed where the injunction is dissolved by a court of chancery, and that, as the circuit court here did not dissolve the injunction, but the same was dissolved by the Appellate Court, damages could not be assessed by the circuit court. Section 12 of the Injunction act provides as follows: "In all cases where an injunction is dissolved by any court

of chancery in this State, the court, after dissolving such injunction, and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require, and to equity appertain, to the party damnified by such injunction," etc. (2 Starr & Cur. Ann. Stat. —2d ed.—p. 2146.) The statute, providing for an appeal from an interlocutory order granting an injunction, authorizes the Appellate Court to dissolve the injunction; but it was never the intention of the legislature that the Appellate Court, which is a reviewing court, should take testimony for the purpose of assessing damages upon the dissolution of an injunction. When the Appellate Court dissolves the injunction, it is the duty of the circuit court to hear evidence, and assess the damages. It is a narrow construction of section 12 of the Injunction act to say that it is only the Appellate Court, which can assess the damages after dissolving the injunction. The case stands in precisely the same situation after the reversal by the Appellate Court of the order granting the injunction, as if the circuit court had itself dissolved the injunction. As the case still remains in the circuit court, notwithstanding the appeal to the Appellate Court, the order of reversal, entered by the Appellate Court, merely has the effect of wiping out the order granting the injunction, and the assessment of damages by the circuit court is not inconsistent with the express language of the statute. (*Chicago Dock and Canal Co.* v. *Garrity,* 115 Ill. 155; *Bolling* v. *Tate,* 65 Ala. 417; *Garrity & Dreyer* v. *Chicago and Northwestern Railway Co.* 22 Ill. App. 404.) Nor do we see any reason why, in determining the amount of damages to be assessed, the services of counsel in the Appellate Court upon the appeal from the order granting the injunction cannot be taken into consideration. The amount assessed, $415.00, is shown by the testimony to be a reasonable fee for the services of counsel in moving to dissolve the

injunction in the circuit court, and attending before the master upon the reference of the motion to dissolve, and following the case to the Appellate Court, where the order granting the injunction was finally reversed. The record shows the making of an abstract for the Appellate Court, the argument of the case before the Appellate Court resulting in an affirmance of the judgment below by the Appellate Court, the filing of a petition for rehearing in the Appellate Court, the granting of the rehearing by that court, and, after the granting of the rehearing, a reversal, as above stated. The weight of the evidence is in favor of a fee of at least $600.00 but only the sum of $415.00 was awarded. We think the evidence sustains the action of the court in assessing the damages at this amount.

It is said by counsel that the assessment of damages was premature, and that the court should not have assessed the damages until the final hearing of the cause. The decree or order of the court, entered in March, 1904, shows that there was a final hearing of the cause, because the court dismissed the bill upon demurrer, and, at the same time, assessed the damages arising from the granting of the injunction. The injunction here was dissolved on the face of the bill, and not upon the coming in of an answer, raising a question of fact. When an injunction is the only relief sought, and it is dissolved on motion upon the bill alone, which operates as a demurrer for want of equity, and admits all the facts alleged, the order of dissolution is a final disposition of the case, and the formal dismissal of the bill may regularly follow, but not otherwise. (*Martin* v. *Jamison*, 39 Ill. App. 248; *Gillett* v. *Booth*, 6 id. 423.)

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*