IRWIN R. CALLEN *et al.*, Plaintiffs-Appellees, *v.* IQBAL AKHTER, M.D., Defendant-Appellant.

First District (2nd Division)   Nos. 77-620, 77-1320, 77-1514 cons.

Opinion filed October 31, 1978.—Rehearing denied December 5, 1978.

Nicholas T. Kitsos, of Chicago, for appellant.

Robert Marks and Robert A. Simon, both of Chicago (Marks, Marks and Kaplan, of counsel), for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

These consolidated appeals arise from a judgment entered by the circuit court of Cook County, Chancery Division, pursuant to an accounting, in favor of plaintiffs Irwin R. Callen M.D. and Northern Cardiac Associates, Ltd., and against defendant Iqbal Akhter, M.D. Subsequent to the entry of the judgment Akhter filed a petition to set aside the judgment pursuant to section 72 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 72.) This petition was dismissed. He appeals from the entry of the judgment and the dismissal of his section 72 petition.

Plaintiff, Irwin Callen, is a physician licensed to practice medicine in the state of Illinois. Callen was the sole owner of a medical practice located at 5701 North Ashland Avenue, Chicago, Illinois. Callen specialized in cardiac illness and had acquired a substantial practice and hospital affiliation over a 25-year period (1947-1972).

Subsequently, Callen became unable to actively participate in his practice due to failing health. Accordingly, he desired to enter into an agreement with another physician regarding the continued operation of his medical practice.

Iqbal Akhter was a physician then practicing in the State of Wisconsin. Akhter was agreeable to operating Callen's practice and on November 15, 1973, both physicians entered into a written agreement pursuant to which a medical corporation, Northern Cardiac Associated, Ltd., was formed. Akhter became a 50-percent shareholder and was elected president, treasurer and a director of the corporation.

Under the terms of the agreement Akhter was to remain in the employ of the corporation for a period of three years ending November 30, 1976. Akhter agreed to devote "full time" as an employee of the corporation and include in the corporation's earnings all of Akhter's earnings and billings, including consultation fees, salaries from hospitals and teaching fees for the same three-year period. Akhter further agreed that upon the termination of his employment he would not treat any of

the corporation's patients for a period of 18 months if the patients were found to reside within a 20-mile radius of the Ashland Avenue corporate office.

Callen loaned $20,000 to the corporation for its working capital and transferred to the corporation all of the assets of his former practice. Included in the assets was a list of patients.

On July 29, 1975, Callen brought suit for an accounting and other relief. The complaint alleged that Akhter had breached the medical incorporation agreement by failing to account for certain outside earnings. The complaint further alleged that Akhter had violated his fiduciary duty to the corporaton by wrongfully diverting corporate funds and confidential patient lists. The latter misappropriation allegedly violated the aforementioned restrictive covenant of the contract.

Akhter filed an answer in response to Callen's complaint. Through this answer Akhter (1) denied the existence of the contract, (2) asserted that Callen had wrongfully terminated the practice and sold its assets (for which Akhter demanded an accounting) and (3) urged that Callen be denied relief upon application of the equitable doctrine of "unclean hands."

On August 11, 1976, after a hearing on the matter, the circuit court found for Callen and against Akhter and ordered an accounting. An interlocutory decree was entered to this effect. Akhter prematurely appealed to this court from this interlocutory order and the appeal was dismissed. On December 2, 1976, a final accounting was held and the circuit court entered judgment against Akhter in the amount of $100,936 plus his accounts receivable. Akhter appealed from this judgment and then filed a section 72 petition (Ill. Rev. Stat. 1975, ch. 110, par. 72) to have the judgment set aside. The section 72 petition was based upon the alleged illegality of the medical incorporation agreement as a fee-splitting arrangement. Upon dismissal of the section 72 petition Akhter appealed. The appeals have been consolidated for our review.

Subsequent to the dismissal by this court of the aforementioned premature interlocutory appeal and prior to the return of our mandate to the circuit court of Cook County, that court, with participation of both parties, conducted a hearing relative to the award of damages. This sequence of events prompts Akhter to contend that the damage award is void due to the lack of jurisdiction in the circuit court. His claim is premised upon Illinois Supreme Court Rule 369(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 369(b)) which reads as follows:

> "(b) Dismissal or Affirmance. When the reviewing court dismisses the appeal or affirms the judgment and the mandate is filed in the circuit court, execution may issue and other proceedings may be conducted as if no appeal had been taken."

Rule 369(b) appears to require the filing of the mandate as a condition precedent to further circuit court proceedings subsequent to the dismissal of an appeal. There is no express exception for interlocutory appeals.

■■ Despite the language of Rule 369(b) we are convinced that the circuit court was correct in undertaking a final accounting in the absence of a filed mandate. Our decision on this matter is two-pronged. First, assuming the applicability of Rule 369(b) to interlocutory appeals, we are of the opinion that the voluntary appearance of defendant in the circuit court, after the dismissal of the appeal, without waiting for or requiring the formality of a remanding order, and litigating the matter of the assessment of damages without objection, amounted to a waiver of a remanding order, and authorized the circuit court to proceed to assess the damages. *Gerard v. Gateau* (1884), 15 Ill. App. 520.

■■ Second, we are of the opinion that Rule 369(b) cannot apply to premature interlocutory appeals. We base this finding upon the language of *Fry v. Radzinski* (1906), 219 Ill. 526, 76 N.E. 694. In *Fry*, the Illinois Supreme Court, when interpreting a provision of the civil practice act, stated:

> "Section 83 of the Practice act provides that, 'when any cause or proceeding either at law or in chancery is remanded by the Supreme Court or Appellate Court, as the case may be, for a new trial or hearing by the court, in which such cause was originally tried, the Supreme Court, or Appellate Court, as the case may be, shall issue its mandate, reversing and remanding such cause directly to such trial court; * * *.' Section 83 applies to a case, where a final judgment has been rendered, and has no application to such a case as the one at bar [interlocutory appeal]. * * * It thus appears that the appeal from the interlocutory order, granting the injunction, did not remove the case from the circuit to the Appellate Court; but the case still remained on the docket of the circuit court, and, therefore, there was no occasion for any proceedings to re-docket or re-instate it." 219 Ill. 526, 539-40.

■■ The *Fry* rationale is instructive in the case at bar. The interlocutory appeal was premature. The circuit court had not yet entered a final accounting, and, obviously, had to do so. Consequently, the case remained on the circuit court docket subject to final disposition. The issuance of a mandate was not a condition precedent to the continued proceedings in the circuit court. Accordingly, the damage award entered by the circuit court was proper.

Akhter's section 72 petition (Ill. Rev. Stat. 1975, ch. 110, par. 72) based upon the alleged illegality of the medical incorporation agreement was properly dismissed by the circuit court. The record reveals no illegality in the medical incorporation agreement. Since the agreement

did not suffer from illegality the accounting undertaken by the circuit court and the damage award pursuant thereto were valid. As further discussed hereinafter, the section 72 petition failed to present matters which would have prevented the rendition of the judgment.

Various contractual matters were raised for review by Akhter. These include the alleged insufficient "meeting of the minds" of the parties, the alleged illegality of the medical incorporation agreement as a "fee-splitting" arrangement, and the validity of the restrictive covenant contained in the medical incorporation agreement.

He contends that the "meeting of minds" necessary for the existence of any contract was absent in the present case. We find this contention without merit.

■■ The fact that the record includes a secondary or supplementary agreement which was never executed by the parties is not fatal to the intention of the parties to be bound to the original agreement. Furthermore, the parties did embark upon the performance of the original agreement as written, and this performance evidences an intention to be bound by the terms of the agreement.

The case of *La Salle National Bank v. International Ltd.* (1970), 129 Ill. App. 2d 381, 263 N.E.2d 506, cited by defendant is not dispositive of the litigation at bar. *La Salle* considered a series of contracts for the sale of real estate. One of the parties never signed the agreements. In the present case each party had signed the medical incorporation agreement. Furthermore, the court in *La Salle* determined that binding contractual obligations could not exist due to the absence of agreement upon certain vital matters (water systems, road frontage and a legal dispute relative to the question of fees for a sewer tap-on). In the case at bar the medical incorporation agreement contained the provisions desired by the parties for inclusion in the contract. No vital matters remained unresolved.

Akhter also contends that the medical incorporation agreement reflects an illegal "fee-splitting" arrangement. We note that Akhter did not raise this contention in the proceedings before the trial court until he initiated the section 72 proceedings. However, where the illegality of a contract is not raised by the parties below such illegality can be asserted for the first time in this court. Furthermore, this court has the jurisdiction to, *sua sponte*, consider the question. *Merchandise National Bank v. Kolber* (1977), 50 Ill. App. 3d 365, 365 N.E.2d 688; *Ostrowsky v. Berg* (1949), 337 Ill. App. 422, 86 N.E.2d 546.

Defendant's contention relies upon the language of the Medical Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 16a(14)), for support. This statute provides for revocation or suspension of a medical license for:

"14. Directly or indirectly giving to or receiving from any

physician, person, firm or corporation any fee, commission, rebate or other form of compensation for any professional services not actually and personally rendered."

He argues that since Callen was entitled to receive profits of the corporation pursuant to the terms of the agreement and Callen was unable to practice medicine, they split fees. He argues that a valid contract cannot contemplate a "fee-splitting" arrangement.

■■ We do not disagree with the proposition that a "fee-splitting" arrangement would be unlawful. We do, however, find that the medical incorporation agreement in the case at bar does not reflect "fee-splitting" and note that this type of incorporation agreement is specifically permitted by the language of section 16(14) of the Medical Practice Act. The remainder of section 16(14) provides that:

> "*Nothing contained in this Subsection prohibits persons holding valid and current licenses under this Act* from practicing medicine in partnership under a partnership agreement or in a corporation authorized by 'The Medical Corporation Act,' as now or hereafter amended, or as an association authorized by 'The Professional Association Act' as now or hereafter amended, or under 'The Professional Corporation Act' as now or hereafter amended, *from pooling, sharing, dividing or apportioning the fees and monies received by them or by the partnership, corporation or association in accordance with the partnership agreement or the policies of the Board of Directors of the corporation or association.* Nothing contained in this subsection shall abrogate the right of 2 or more persons holding valid and current licenses under this Act to receive adequate compensation for concurrently rendering professional services to a patient and divide a fee; provided, the patient has full knowledge of the division, and, provided, that the division is made in proportion to the services performed and responsibility assumed by each." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 91, par. 16a(14).

It is clear that the medical incorporation agreement contemplated a sharing of the monies and fees received by the corporation. Since an agreement of this nature is expressly provided for by statute (Ill. Rev. Stat. 1975, ch. 91, par. 16a(14)), the agreement in the case at bar is not illegal.

■■ The medical corporation agreement also included Akhter's covenant not to compete. This covenant provides:

> "6. * * * that, upon termination of [Akhter's] employment as an employee of the medical corporation, for any reason whatsoever, he will not, for a period of eighteen (18) months from the date of such termination, call upon or treat any patients of the medical corporation who reside within a twenty (20) mile radius of the

medical corporation's office at 5701 North Ashland, Chicago, Illinois, either for himself, or in behalf of any other doctor or physician or doctors or physicians, firms, partnerships, association or corporation. * * *"

It is true that covenants not to compete are in restraint of trade and are ordinarily held void. However, in cases such as the present one, where the limitation as to time and territory is not unreasonable, the agreement is valid and enforceable. *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433; *Field Surgical Associates, Ltd. v. Farrokh Shadab, M.D.* (1978), 59 Ill. App. 3d 991, 376 N.E.2d 660; Note, *Validity Of Covenants Not To Compete: Common Law Rules and Rules and Illinois Law*, 1978 Ill. L.F. 249.

In concluding, we note that the damage award entered by the circuit court was not erroneous. The circuit court awarded damages in the amount of $100,936 plus accounts receivable. The following represents a summary of the damage award:

Defendants Receipts From December 1, 1973-November 30, 1976:

| | |
|---|---|
| 1. From Outside Sources | 56,410.00 |
| 2. From Patients For Services Rendered by Defendant | 167,416.00 |
| 3. From Corporate Funds Diverted | 17,085.00 |
| | 240,911.00 |

Credits To Defendant:

| | |
|---|---|
| 1. Salaries Per Contract From December 15, 1974-November 30, 1976 | 93,150.00 |
| 2. Defendant's Expenses From December 15, 1974-November 30, 1976 | 42,334.00 |
| 3. For Amounts Reimbursed To Plaintiff | 4,491.00 |
| | 139,975.00 |

Damages:  240,911.00
        −139,975.00
         100,936.00 plus accounts receivable.

Based upon our review of the record, we find no errors in the orders entered by the circuit court. All orders entered by the circuit court were in accord with the manifest weight of the evidence and the court properly

dismissed defendant's section 72 petition. Therefore, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.