## WILLIAM EVANS

*v.*

## RALPH HANSON *et al.*

1. PARTNERSHIP — *payment of money by an incoming partner — to whom it belongs.* Two persons, being engaged in the produce and commission business, as partners, received another into the firm, who paid a sum of money for the purpose indicated in the following receipt, given him by the two original members of the firm :

" Received of William Evans, two thousand dollars, for and in consideration of one-half interest in one safe, two desks, two pair of scales, one stove and pipe ; also the undivided half of our trade and good will, and the benefit accruing therefrom ; also one-half of the contract of potatoes for future delivery, and the benefits of the same as per contract of copartnership, made this date between Hanson, Evans and Moore."

*Held,* the money thus paid belonged to the two original partners, and, being placed to their credit on the books of the new firm, was properly allowed to them on a settlement of its affairs.

2. SAME — *articles of partnership must govern the rights of the parties.* Where persons, entering into partnership, enter into a written agreement in respect thereto, all anterior negotiations and propositions, as well as guaranties, if made, are merged in the articles of partnership, and such other instruments as the parties may execute concerning the same.

APPEAL from the Superior Court of Chicago; the Hon. JOHN M. WILSON, Chief Justice, presiding.

The opinion states the case.

Messrs. ARRINGTON & DENT, and E. S. HOLBROOK, for the appellant.

Mr. GEORGE SCOVILLE, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

This was a bill in chancery, filed by Ralph Hanson and John M. Moore, in the Superior Court of Chicago, against William Evans, for the settlement of a partnership account. The bill alleges, that, on the first day of May, 1865, appellees entered

into copartnership with appellant in a general produce and commission business in the city of Chicago, under the firm name of Hanson, Evans and Moore. That the articles of partnership required the capital stock to be $25,000, one-half of which was to be furnished by Hanson and Moore, and the other half by Evans, and the profits and losses were to be borne, one-half by Hanson & Moore, and the other half by Evans. The latter was to employ his brother, who, as agent of the firm, was to devote his time and skill to the business of the firm. Hanson & Moore were not to withdraw more than $165, each, per month, nor Evans more than $300, unless it should be by consent. The time of all the parties was to be devoted to the business of the firm, and they were not to engage in any other regular business; and the partnership to continue during a good understanding of the parties.

It appears that all of the capital stock was not contributed. Hanson & Moore put in $836.92 in money; two thousand dollars paid to them to become a partner and for an interest in contracts for produce, and for the good will of the firm of Hanson & Moore; some potatoes and beans and other articles, which in all made an aggregate of $10,850.34. They had drawn out, up to the time of the dissolution, $580.35. Evans paid in $10,235.08, and had drawn out, up to the time of the dissolution, $274.13. It also appears, that, when he determined to withdraw from the firm, he drew out in money $11,260, and a note payable to the firm on one Maybin, on which there was a balance of $761.14, making a total of $12,295.19, drawn from the firm by him.

Hanson & Moore, having the property of the firm left in their hands, proceeded to convert it into money by sale. And from this source they seem to have received $5,734.30, making the total amount received by them $6,314.65. They also claimed, for expenses and their time in closing the business of the firm after Evans withdrew, $422.12; also interest on the excess in the hands of Evans over and above his share, $97.42. Also one-half the rent of the store in closing out, $128.33, and for clerk hire and labor for the same purpose, $165. It likewise

appears that Evans paid a clerk, after the dissolution of the firm, for examining the firm books and correcting them, $250.

On the hearing the court below decreed, that the account be taken and stated. And on the hearing, on the bill, answer, replication and proofs, the court below found that Evans had overdrawn the sum he was entitled to receive on a distribution of the assets of the firm, and decreed that he should pay to each of the other members, the sum of $1,683.27, less $62.50 each, being one-half of the sum paid the clerk for correcting the books. Evans brings the case to this court by appeal, and asks a reversal of the decree.

It is insisted, that the court erred in treating the two thousand dollars paid by appellant to appellees at the time he was admitted as a member of the firm, as belonging to them; but it is urged that it should have been allowed to appellant. The purpose of its payment will appear by a receipt, which was given by appellants to him when he paid the money. And it is this:

"Received of William Evans, Chicago, May 1st, 1865, two thousand dollars ($2,000), for and in consideration of one-half interest in one safe, two desks, two pair of scales, one stove and pipe; also the undivided half of our trade and good will, and the benefit accruing therefrom; also one-half of the contract of potatoes for future delivery, and the benefits of the same as per contract of copartnership, made this date between Hanson, Evans & Moore.

                          "R. HANSON & CO."

From the terms of this receipt there would seem to be no doubt, that the money paid was intended by all parties to, and did, become the property of appellees. It will bear no other reasonable construction. We should have to do violence to the language, to hold that it was intended, or any part of it, to remain the property of Evans. And, as a further evidence that such was the intention of all parties, it was credited in equal amounts to the stock account of appellees, and we hear of no objection having ever been made by appellant to the credit.

Unless there are other circumstances in the case which overcome this evidence, it was properly regarded as the money of appellees in stating the account.

It is however urged, that appellees guarantied that the profits on potatoes should amount to as much as he paid for the interest in the good will of the firm. Even if such a guaranty had been given, the evidence of Kimball, the book-keeper, shows that there was made a profit of about $2,500 on potatoes on hand, and those contracted for when the receipt was given. And, so far as we can see, there is no evidence in this record which contradicts this statement. It is true, that, when all of the property of the firm is reduced to money, there appears to have been a loss on the business of the firm. This may have accrued from the expenses of the firm and losses in closing out the property, when sold at auction. But it is not pretended that appellees guaranteed such profits in the articles of partnership or in the receipt. If such conversation did occur, it was before the writings were executed. They must be regarded as fully stating the terms and conditions upon which the partnership was formed. All anterior negotiations and propositions, as well as guaranties, if made, were merged in the articles of partnership and this receipt.

There is no testimony that appellee did not honestly believe that such profits would be made. We see no evidence that inclines us to believe the representations were made with the intention to deceive. And it would seem that their expectations were realized, if Kimball may be credited in his testimony. But if they were not, unless the statements were fraudulently made with intent to deceive, it would not affect the rights of the parties. We think this item was properly allowed to appellees in stating the account.

The other questions are made on the allowance of other items for expenses, house rent and other charges. But, from a careful examination of the evidence, we are unable to see how the account could have been differently stated. We are of the opinion that appellant is charged with no item in property, nor were appellees credited with any thing to which they were

not entitled. Upon the entire record no error is perceived and the decree must be affirmed.

*Decree affirmed.*