Arthur Ostrowsky, Appellee, v. Henry Berg et al., Trading as Berg Sales Company, Appellants.

**Gen. No. 44,188.**

Opinion filed May 10, 1949. Released for publication June 3, 1949.

SCHWARTZ, ALLEN & SHRIMAN, of Chicago, for appellants, and ROBERT BERG, of Chicago, *pro se.*

REUBEN J. FELDMAN, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

From a judgment striking their amended defense and counterclaim and entering judgment against them for $25,534.75, defendants appeal.

One of the defendants, Robert Berg, an attorney practicing at the Chicago bar, represented defendants in the trial court and upon this appeal. He wrote and filed defendants' brief in this court, in which

he stated that "the note sued on by the plaintiff in the case at bar was for the purchase of articles designed to prevent conception . . . the alleged sale of the prophylactics was contrary to public policy and the court erred in rendering judgment in favor of the plaintiff." No other contention was raised. *Lanteen Laboratories, Inc. v. Clark,* 294 Ill. App. 81, was cited as decisive of the appeal. There is nothing in the record that shows that the "prophylactics" sold by plaintiff to defendants were in fact contraceptives, and the unwarranted statement in the brief, that the "prophylactics" were designed to prevent conception, has no probative force, and must be disregarded in considering the contention raised in this court. However, it is the established rule of this State that a contention such as defendants now seek to raise can be asserted for the first time in this court or the Supreme court; indeed, that it may be raised *sua sponte* by said courts.

In *Electrical Contractors v. Schulman Co.,* 391 Ill. 333, the court said (p. 339):

"The power by which courts may declare a contract void as against public policy is far-reaching and it is to be exercised only when it clearly appears that it is contrary to a constitutional mandate, a statute, judicial decisions, or that it manifestly tends to injure the public in some way. (13 C. J. sec. 366, page 427.) In *Zeigler v. Illinois Trust and Savings Bank,* 245 Ill. 180, which was a case that involved a test as to whether a contract contravened public policy, this court said: 'The laws and the public policy of the State permit and require the utmost freedom of contracting between competent parties, and it is only when a contract expressly contravenes the law or the known public policy of the State that courts will hold it void.' The question must be determined from the terms of the contract itself and, in considering the ends to which it leads, the

courts are not privileged to ascribe illegal purposes where there is nothing in the contract from which such a conclusion may be reasonably drawn.''

As there is nothing in the record to show that the articles sold were contraceptives, defendants are forced to claim that the word ''prophylactics'' used in the written contract is sufficient in itself to show that the articles sold were contraceptives. In Webster's New International Dictionary (2d Ed.) the meaning of the word prophylactic is defined as follows: ''Prophylactic adj. 1. Med. Guarding from disease; preventing, or contributing to the prevention of, disease. 2. That guards or preserves; protective; as, a *prophylactic* symbol. Prophylactic n. Med. a. Anything that prevents, or contributes to the prevention of, disease, as fresh air, nutritious food, or rest; a preventive; specif., a prophylactic medicinal preparation. b. Obs. Prophylaxis.'' In *First T. & S. Bank v. Powers*, 393 Ill. 97, the court said (p. 106): ''Under the circumstances here present, where an agreement appears innocent upon its face, and there is not a scintilla of evidence to the contrary, a presumption of legality obtains.'' *Lanteen Laboratories, Inc. v. Clark, supra*, cited by defendants, was decided by this Division of the court, and leave to appeal was denied by the Supreme court (294 Ill. App. lii). We adhere to what we therein held, but that case has no application to the instant one. In the *Lanteen* case both parties admitted that they were engaged in the sale of contraceptives, and we raised *sua sponte* the question as to the legality of the contract between the parties. After reviewing the question at considerable length we held that the contract between the parties was tainted with illegality, was against public policy, and that, therefore, equity should not open its door to settle a dispute between the two sordid traffickers in contraceptives. But there is nothing in the record in this case to justify a

finding that the transaction between plaintiff and defendants involved a sale of contraceptives. We feel impelled to refer to the attitude of Attorney Berg in this court: He is one of the defendant partners, and the contract in question (hereinafter set forth in full) was drafted by the defendants. In the brief filed by the said attorney he states to this court that he and his partners, by the ''purchase order,'' purchased from plaintiff $100,000 worth of contraceptives which they were to retail, that the contract was against public policy, and therefore the judgment entered against them should be reversed. It appears, however, that Attorney Berg and his partners filed in the trial court an amended counterclaim against plaintiff in which they ask for large damages because, they allege, plaintiff breached the contract; and even in their ''amended and supplemental brief'' they contend that their amended defense and counterclaim stated a good defense and a good cause of action against plaintiff, and that the trial court erred in striking the amended defense and counterclaim.

The original brief of defendants was filed in this court October 17, 1947. On October 24, 1947, they filed a motion, supported by the affidavit of Attorney Berg, in which they prayed that they be given leave to file amended and supplemental briefs, and that certain lawyers be allowed to file their appearances as counsel for defendants. In the affidavit Berg stated that since December, 1941, he has not been engaged in the active practice of law and that immediately after the entry of the judgment in the case he, in behalf of himself and the other defendants, engaged counsel, who was highly recommended, for the purpose of preparing briefs and prosecuting the appeal from the judgment; that said counsel secured an extension of time to October 17, 1947, to file briefs and abstracts; that on the afternoon of that day the affiant discovered that no

work had been done on the brief and that in order to avoid default he made every effort to prepare and secure the printing and filing of the abstracts and briefs in behalf of defendants; that he did not have time to prepare the briefs of defendants in a thorough manner, and he prayed that defendants be given leave to file an amended and supplemental brief in the cause. Plaintiff filed strenuous objections to defendants' motion, in which he urged, *inter alia,* that on April 30, 1947, defendants perfected their appeal and that they had had almost six months in which to prepare the abstract and brief. We granted defendants' motion. On November 14, 1947, the new attorneys for defendants filed an amended and supplemental brief for defendants, in which they practically abandoned the contention that the contract was against public policy and advanced a new point, viz., that "the amended defense and counterclaim filed by defendants stated a good defense and a good cause of action against plaintiff's statement of claim," and that the trial court erred in striking that pleading. Under our rules new points cannot be raised even in a reply brief, and if plaintiff had made a motion to strike defendants' amended and supplemental brief from the files it would have received serious consideration. The argument is now made that "in a suit on a written contract the parties may rely upon, and the parol evidence rule is not violated by, proof of a collateral contemporaneous oral agreement which is consistent with the terms of the written instrument." Plaintiff contends that the action of the court was correct; that the written contract between the parties was complete upon its face, and that the oral undertakings alleged in the counterclaim were an effort to vary or contradict by parol evidence the complete contract signed by the parties.

The following is the contract between the parties upon which plaintiff relies:

"PURCHASE ORDER    ORDER NO. 10476

BERG SALES CO.

Successors to B. & N. Sales in Chicago
119 South Wells St. 25 South Halsted St.

24 North Fourth St.

CHICAGO, ILLINOIS                MINNEAPOLIS, MINN.

Chicago, November 20 1946

Arthur Ostrowsky      SHIP TO      BERG SALES CO.
451 Melrose                        119 So. Wells Street
Chicago, Illinois                  Chicago, Illinois

VIA: Cheapest Way
            Net: Cash &
      TERMS: Notes
            F. O. B. Factory Freight Prepaid X

| QUANTITY | DESCRIPTION IN FULL | PRICE | EXTENSION |
|---|---|---|---|
| 50,000 | Gross X'Cello Matchbox Prophylactics | $2.00 | $100,000.00 |

Payable $25,000.00 by Check #1876

Promissory Note for $25,000.00 due 30 days
   "          "    "  $25,000.00 due 60 days
   "          "    "  $25,000.00 due 90 days

O.K.
[Signed] ARTHUR OSTROWSKY

INVOICES TO MAIN OFFICE & BRANCH

BILLING INSTRUCTIONS—To Avoid Delay in Payment:—
Invoice in duplicate.
Duplicate to store where shipped, with original bill of
   lading.
Original to 119 South Wells St., Chicago, Ill. with
   duplicate bill of lading.
ALL BILLS ARE PAID FROM CHICAGO.

Conditions of purchase:

(1) Our order number must appear on invoice.

(2) Order must be acknowledged and shipping date given—unless immediate shipment is made.

(3) Invoices with E. O. M. terms, dated the 26th of the month or later, will be entered as a purchase made the following month.

(4) Should shipment be made by any route other than that designated, we shall not be liable for the difference in transportation costs.

(5) Acceptance of this order by shipper guarantees manufacture or production of the merchandise in accordance with Federal Child Labor Laws and all Federal and State Pure Food Laws.

(6) This order is given under the condition that the shippers will protect us and hold us harmless against any liability, loss or expense by reason of any patent or trade mark litigation now existing or to be commenced arising out of any infringement of patent or trade mark on the merchandise hereby ordered or any part thereof.

(7) Goods purchased are subject to our inspection and approval. If not meeting our standard of quality as denoted by the order given, or if damaged in any way to retard resale of same, or if not in accordance with order given in any other way, goods shall be rejected and returned to shipper at their expense. We will not assume liability for any goods under any circumstances unless goods are delivered to destination.

(8) All back orders are to be shipped prepaid.

> BERG SALES COMPANY
> [Signed] Henry Berg
> Store Manager''

The following is the note sued upon:

''$25,000.00    Chicago, Ill    November 20th    1946

Ninety (90) days   after date   We promise to pay to
the order of   ARTHUR OSTROWSKY
TWENTY-FIVE THOUSAND   ($25,000.00) —————— Dollars
                                        100
at any Banking house in Chicago, Illinois
Value received with interest at the rate of 5 per cent
per annum.

BERG SALES CO.

[Signed]   By   Robert   Berg

[Signed]   Henry Berg

No. 3 Due February 18th 1947   119 S. Wells St.''

It is admitted by defendants that the goods specified
in the written contract were delivered to and accepted
by them.   The contract was prepared by defendants,
one of whom, Robert Berg, as we have heretofore
stated, was an attorney at law.   It is admitted by
defendants that they made the payment of $25,000 by
check; that they paid the promissory note for $25,000
due in thirty days; that they also paid the promissory
note for $25,000 due in sixty days, and that the contract
was signed by plaintiff and by defendants.

In *Decatur Lumber Co. v. Crail,* 350 Ill. 319, the
court states (pp. 323, 324): ''If a written contract
purports on its face to be a complete expression of the
whole agreement, it is to be presumed that the parties
introduced into it every material item and term, and
in construing it the court will not add thereto another
term about which the agreement is silent.   (*Sterling-
Midland Coal Co. v. Coal Co.,* 334 Ill. 281; *Armstrong
Paint Works v. Can Co.,* 301 id. 102.)   No words can
be added to or taken from an instrument and thereby
change the plain meaning of the parties as expressed
therein.   (*Stevens v. Felman,* 338 Ill. 391.)   The object
of construction is to ascertain the intention which the
parties have expressed in the language of the contract,
and, where there is no ambiguity in the terms used, the
instrument itself is the only criterion of the intention

of the parties. (*Green v. Ashland State Bank,* 346 Ill. 174.)''

In *Ginsburg v. Warczak,* 330 Ill. App. 89, the court states (pp. 96, 97):

''Plaintiff contends that defendant agreed, orally, when executing the written agreement, that the provisions of the two paragraphs which were deleted therefrom, at the time it was executed, would remain in full force and effect as a binding oral agreement. Under the provisions of the deleted paragraphs the defendant would be burdened with the additional obligation of not interfering with the good will of the corporation, of not engaging in the same line of business as the corporation for one year, of not soliciting the business of customers of the corporation, and of not hiring any of the employees of the corporation for a period of one year. Plainly, the oral undertaking would vary and add to the terms of the written agreement, in that defendant would be obliged to do more, by the oral agreement, than the written agreement provided. Where a written agreement shows a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties is included therein. Parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular term to which the parol evidence is directed. All conversations and parol agreements between the parties prior to the written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the agreement, or showing an intention or understanding different from that expressed in the written agreement. *Decatur Lumber & Mfg. Co. v. Crail,* 350 Ill. 319, 323; *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102, 106. Evidence of the alleged oral agreement would not be admissible, as such oral agree-

ment would be inconsistent with the written agreement of the parties and would impose burdens on defendant not contemplated by the written agreement.''

In *Telluride Power Co. v. Crane Co.*, 208 Ill. 218, the court states (pp. 226, 227):

''. . . The rule is, that when the writings show, upon inspection, a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included in the writings. The fact that a point has been omitted which might have been embodied therein will not open the door to the admission of parol evidence in that regard. (*Seitz v. Brewers' Refrigerating Co.*, 141 U. S. 510.) . . . The rule is too well recognized to require citation of authorities that all preliminary negotiations, whether oral or written, are merged in the written contract. The offer by appellants to buy the pipe, which appears in Nunn's letter of February 5, and the stipulation of terms therein upon which the purchase would be made, considered together with appellee's letter and telegram of the eighth accepting appellants' offer, constitute a contract in writing which is clear and unambiguous, both as to its object and extent. Considering these documents alone, without any reference to previous negotiations, they leave nothing to be explained,—they contain all the elements of a complete written contract. If appellants had desired any further conditions, it was their duty to have so stipulated. The fact that in their written proposal to purchase they require no warranty of the pipe, precluded them from insisting upon it on the trial.''

The instrument in the instant case, is, in our judgment, a complete contract of purchase and sale. No provision that is customarily included in a contract of that kind is lacking; both parties are named in the agreement and *both parties signed it;* the subject mat-

ter of the sale is fully described; the quantity, unit price, and total price are specified; terms of payment and delivery are clearly set forth. Furthermore, the agreement contains a number of provisions covering such matters as guarantees under the Pure Food and Child Labor Laws and indemnifies against patent or trade-mark litigation. The contention raised by defendants that this instrument is merely a "naked order for goods" hardly warrants serious consideration. Of course, if an instrument, upon its face, shows that the contract is incompletely stated, then parol evidence of additional terms may be introduced. We will briefly refer to the oral undertakings alleged in the amended counterclaim: Defendants allege a promise by plaintiff to guarantee the factory price of the goods sold—the contract specifies a price of two dollars per gross subject to no changes. The counterclaim also alleges an undertaking by plaintiff to assist defendants in the resale of the goods purchased—the written contract states no such undertaking. The counterclaim also alleges an oral agreement giving defendants the exclusive right to sell the brand of merchandise purchased for a period of ninety days; such an oral agreement would clearly vary the terms of the written contract. It is idle for defendants to argue that the alleged oral agreements would not involve material changes in the written contract and add new terms to it. We have carefully examined the cases cited by defendants in support of their contention that the alleged oral agreements did not violate the parol evidence rule, but none of them changes or modifies the established law stated in the cases we have cited. Defendants rely upon such cases as *Offenberg v. Arrow Distilleries Co.,* 222 Ill. App. 512. In that case the court was fully justified in holding that the written order under consideration did not purport to express the entire agreement between the parties, and the order was signed only by the ordering party. Defendants also cite *David J. Ross Co. v.*

*Blumberg,* 331 Ill. App. 22 (Abst. Op'n), which was decided by this Division of the court. There we cited *Federal Rubber Mfg. Co. v. Plow City Garage,* 204 Ill. App. 126, where it was held that the rule that a written contract of sale avoids a prior verbal warranty has no application where the writing is merely an order for the goods. In the *Ross* case the alleged written contract was merely an unsigned invoice for the goods.

We hold that the trial court was justified in striking defendants' amended defense and counterclaim and in entering the instant judgment.

The judgment of the Municipal court of Chicago is affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.