Knight Blanchard, Clarence A. Blanchard, and Blanchard Securities Company, Appellants, v. Frank J. Lewis, Appellee.

## Gen. No. 45,410.

Opinion filed December 18, 1951.
Rehearing denied January 22, 1952. Released for publication January 22, 1952.

BRUNDAGE & SHORT, of Chicago for appellants; CHARLES F. SHORT, JR., and P. SVEINBJORN JOHNSON, both of Chicago, of counsel.

VOGEL & BUNGE, of Chicago, for appellee; L. H. VOGEL, and GEORGE C. BUNGE, both of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an action by plaintiffs (appellants) on a contract with defendant (appellee) for compensation alleged to be due them from defendant on a contract. The case was tried before a jury and a verdict was found for the defendant and against the plaintiffs. Judgment on the verdict was entered and motion for new trial denied. From this judgment plaintiffs prosecuted their appeal.

Plaintiffs' amended complaint alleges the contract entered into on January 11, 1945, with defendant, Frank J. Lewis, under the terms of which he in return for their undertaking to return to him special assess-

ment bonds of the Village of Westchester and cancellation of certain powers of attorney, would pay to plaintiffs fifteen per cent of the amount which he realized in distribution upon the bonds from the Village of Westchester, which sum totaled $277,650.49. Plaintiffs allege that they performed said contract as required but that defendant failed to pay pursuant to its terms the sum of $41,647.57.

Defendant filed his amended answer in which he admitted executing the contract but denied that in legal effect it constituted a contract between the parties. The defendant denied the remaining allegations of the complaint and by way of affirmative defense alleged that the plaintiffs employed methods calculated to obstruct and delay the distribution of monies on the defendant's bonds and that the plaintiff, Knight Blanchard, misrepresented the amount of the bonds held by others which they also represented. Defendant alleges that the failure to disclose this interest, from which plaintiffs were also receiving compensation, constituted a breach of trust.

The defendant further alleged as a defense that the plaintiff, Knight Blanchard, placed bids at the foreclosure sale so as to benefit bondholders other than the defendant, and that such placement of bids not only caused financial loss to the defendant, but represented a substantial gain to the plaintiffs.

Plaintiffs allege several grounds for reversal, the most important of which is that the trial court erred in admitting evidence to vary the terms of the written contract sued upon. Defendant contends that the admission of such evidence was proper because under the terms of the contract in controversy plaintiffs were the "unfaithful servants" of the defendant, made a secret profit out of the subject matter of the contract at defendant's expense, and consequently defendant was allowed to introduce testimony for the purpose of

showing this. To reach a decision on this point we must decide whether the contract of January 11, 1945, was one of employment or a settlement of a controversy between the parties. This necessitates an examination of the evidence.

The testimony shows that plaintiffs have for many years been in the business of dealing and servicing municipal bonds. Their association with the defendant, Frank J. Lewis, commenced in the year 1941. He was a man of wide business experience in the fields of real estate and building and dealing in municipal and state obligations. One of the plaintiffs, Knight Blanchard, contacted the defendant with reference to the advantage to be realized through the purchase of special assessment bonds of the Village of Westchester. He stated he would be interested in obtaining the bonds for the defendant and that it would be to the defendant's material advantage in so doing. Plaintiffs had been active in the representation of the holders of the Village of Westchester special assessment bonds. Plaintiffs, in order to facilitate their representation and permit concerted action by bondholders, had formed a Bondholders' Protective Committee. They represented certain bondholders under powers of attorney and represented certain other Westchester bonds which had been placed with them for safekeeping.

Defendant entered into an arrangement with plaintiffs under which plaintiffs purchased for his account, between the years 1940 and 1944, a large number of Westchester bonds having an aggregate face value of approximately $600,000. The bonds purchased were left in the possession of plaintiffs under powers of attorney. By the terms of these powers of attorney, Blanchard was authorized to act for and on behalf of the depositors of the bonds. He was given authority to negotiate and conclude an agreement between the

owners of the tax-delinquent properties in Westchester, the owners of the special assessment bonds and persons willing to supply cash with which to settle the general taxes, to the end that the various parcels of real estate covered by the bonds free of taxes and special assessments might be placed on the market under a program of building and sales so as to realize in recovery a much greater measure of the lands' possible value than would result from any other procedure. The properties so acquired were to be placed in a trust or corporation in which the bondholders would receive a fifty per cent interest. A thirty-five per cent interest would be allowed for the property and for the cash advanced to settle the delinquent general taxes and a fifteen per cent interest to Blanchard and his associates as compensation for time and money expended in effecting the results sought. Blanchard and associates were to be given the power to take any and all steps necessary to achieve this, including the use of the bonds for the purpose of applying them against any bid or bids at foreclosure sales. The powers of attorney were to be irrevocable for a period of three years from the date of their execution. They further provided that the depositors released Clarence A. Blanchard of and from any and all liability in dealing with said bonds except for actual bad faith or failure to act. Copies of all powers of attorney were introduced as plaintiffs' exhibits.

Of the bondholders represented by the plaintiffs, the defendant, Frank J. Lewis, had by far the largest number, and he, therefore, bid large sums of money at the various foreclosure sales conducted in the circuit court of Cook county under cases instituted by the State's Attorney of Cook county. Certificates of sale of the property so acquired were issued in the name of M. C. Deal, the defendant's nominee, and the monies that then became available in the hands of the

Village of Westchester for distribution to the special assessment bondholders were distributed on bonds payable from the liens so extinguished.

For several months prior to January 11, 1945, the date of the execution of the contract in question, plaintiffs and defendant had engaged in a series of disputes. Defendant in his testimony admitted that he had found it necessary to have his lawyer, because of these disputes, handle many phases of his transactions with plaintiffs. He further stated that he at that time investigated purported shortages of plaintiffs and the fact that plaintiffs were buying bonds for themselves and people other than the defendant. He further admitted that he wanted back the bonds which he had purchased but which were held by the plaintiffs under powers of attorney. He stated that he did not want to go into a trust agreement such as was provided for by the powers of attorney under which the plaintiffs held the bonds.

Another series of disputes that arose was the amount that was to be bid at the various tax-foreclosure sales that had been filed by the State's Attorney of Cook county covering properties on which plaintiffs and defendant held special assessment bonds. Defendant and his lawyer had several conferences with plaintiff, Knight Blanchard, as to their differences pertaining to the amount to be bid at the sales.

These difficulties culminated on January 3, 1945, in the service of a notice by the defendant on plaintiffs cancelling the powers of attorney under which the bonds were held and demanding their return. Counsel for plaintiffs and defendant met in a series of discussions as a result of which the contract dated January 11, 1945, was prepared and subsequently executed by the plaintiffs and defendant. The terms of the contract are plain and understandable. The provisions relating to settlement read:

251

"That certain powers of attorney were given to Knight Blanchard or Clarence A. Blanchard with respect to approximately Three Hundred Thousand Dollars ($300,000.00) of said bonds;

"That it is the desire of Frank J. Lewis that said powers of attorney be cancelled and said bonds returned to him;

"Therefore, It Is Hereby Agreed:

"1. That Knight Blanchard and Clarence A. Blanchard herewith cancel and surrender to Lewis all powers of attorney previously given to said Blanchards with respect to said bonds, and forthwith surrender and deliver said bonds to Frank J. Lewis, or A. B. Manion, his attorney, as rapidly as receipts and powers of attorney can be verified by Lewis or A. B. Manion with said actual bonds."

The provisions relating to compensation read:

"shall receive in full payment for all services rendered or to be rendered in the collection of said bonds, or any proceeds of said bonds, fifteen per cent (15%) of all proceeds of said bonds, distributed, collected, and paid to Frank J. Lewis. . . .

"In the event of the death of Lewis, this Agreement is not to be construed as a power of attorney terminated by death but is to be construed as a contract of employment, and as such, binding upon the heirs, successor and assigns of said Frank J. Lewis. . . .

"That in the event that Lewis disposes, by sale or otherwise, of any of said bonds . . . so that said bonds are not available to the Blanchards for presentation to and collection from the proper authorities . . . Lewis agrees, nevertheless, in such event, to pay to the Blanchards fifteen per cent (15%) of the amount so available . . . ."

Simultaneous with the execution of the contract, plaintiffs turned over to defendant the powers of attor-

ney and bonds in controversy that the plaintiffs had purchased for the defendant. Thereafter, on August 6, 1946, defendant sent a notice to plaintiffs terminating and revoking all of their authority under the contract dated January 11, 1945, and refused to pay to plaintiffs commissions that they alleged to be due.

An analysis of the testimony indicates clearly that numerous controversies existed between plaintiffs and defendant; that defendant no longer had any faith in plaintiffs and in fact had his attorney dealing with them; that he desired the release of the bonds that he had purchased and which were held by plaintiffs under the terms of the powers of attorney, and that he did not want to enter into the trust that was provided for in the powers of attorney. Defendant, therefore, served notice of cancellation of the powers of attorney and a demand for the return of his bonds. The result was the attorneys for the parties prepared the contract of settlement which is involved in this action.

██ An examination of the contract with these facts in mind leads to the inescapable conclusion that it was an agreement settling the disputes between the parties and not one of employment of plaintiffs by the defendant. The compensation of fifteen per cent of all of the proceeds of the bonds distributed, collected and paid to defendant, that he contends makes the contract one of employment, is merely the amount that defendant agreed to pay plaintiff under the terms of the powers of attorney and is the consideration plaintiffs were to receive for cancelling the powers of attorney and returning defendant's bonds. Therefore, any fiduciary relationship that existed prior to January 11, 1945, ceased with the execution of the settlement contract on this date. The contract is clear and understandable. All disputes, controversies and agreements prior to its execution must be considered as merged in it.

253

*Telluride Power Co. v. Crane Co.*, 208 Ill. 218; *Ostrow-sky v. Berg*, 337 Ill. App. 422.

■ Defendant further contended that plaintiffs waived any objection that they might otherwise have had to the violations of the Parol Evidence Rule by cross-examining defendant on matters dating prior to the contract. An examination of the testimony shows that such examination pertained merely to the powers of attorney, their terms and their cancellation. We are of the opinion that this was necessary for the purpose of showing the consideration alleged in the contract and was not a violation of the Parol Evidence Rule.

■ ■ We are, therefore, of the opinion that the admission of testimony having to do with events that occurred prior to the execution of the contract, the various exhibits having to do with the cancellation of the powers of attorney, the testimony as to the bonds held by plaintiffs, and the testimony as to improper placement of bids at the tax foreclosure sale, was a clear violation of the Parol Evidence Rule. *Evans v. Hanson*, 42 Ill. 234; *Armstrong Paint & Varnish Works v. Continental Can Company*, 301 Ill. 102; *Green v. Ashland Sixty-Third State Bank*, 346 Ill. 174. The trial court erred in overruling plaintiffs' objections to this line of testimony and in denying their motions to strike. Instructions No. 6, 7, 8, 9, 10, 11 and 12 ignored the restrictions imposed by the Parol Evidence Rule and should not have been given.

The judgment of the trial court is reversed and the cause is remanded with directions for a new trial consistent with this opinion.

*Judgment reversed and cause remanded.*

Tuohy, P. J. and Schwartz, J., concur.