(No. 32375.—

KNIGHT BLANCHARD *et al.*, Appellees, *vs.* FRANK J. LEWIS, Appellant.

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

VOGEL & BUNGE, of Chicago, (ALBERT F. MANION, of counsel,) for appellant.

BRUNDAGE & SHORT, of Chicago, (CHARLES F. SHORT, JR., and P. SVEINBJORN JOHNSON, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellant, Frank J. Lewis, was sued upon a contract in the superior court of Cook County by Knight Blanchard, Clarence A. Blanchard, and Blanchard Securities Company, a corporation, the appellees. A jury trial resulted in a verdict and judgment for appellant but, on appeal, the Appellate Court for the First District reversed the judgment and remanded the cause for a new trial. (*Blanchard* v. *Lewis,* 345 Ill. App. 246, 103 N.E. 2d 183.) Appellant, however, moved that judgment be entered against him, alleging that the evidence could be no different on a new trial. Thereupon the Appellate Court struck the remanding order and entered judgment for appellees in the sum of $52,154.63. Leave to appeal to this court has been granted upon petition of appellant.

The cause was tried on an amended complaint, an amended answer and a reply. The complaint alleges that the action is based upon a written contract between the

parties dated January 11, 1945; that prior to the execution of the contract, appellees had in their possession approximately $300,000 par value special assessment bonds of the village of Westchester in Cook County, which were the property of appellant and held by appellees under special powers of attorney which had not lapsed on the date of the contract; that the said powers of attorney created vested interests in appellees; that upon request of appellant, as set forth in the contract, it was agreed between the parties that the powers of attorney should be cancelled and the bonds returned to appellant in consideration of the execution of the contract sued upon, which related to approximately $600,000 of the same type bonds. Continuing, the complaint alleges that by the terms of the contract appellant was to pay appellees a sum of not less than fifteen per cent of the amount appellant collected on the bonds, as compensation for the time, effort and services rendered by appellees in facilitating, expediting and securing payment of the bonds both under the former special powers of attorney and the contract; that appellant had presented bonds directly to the village on divers dates and had collected the sum of $277,650.49, and that he has refused to pay appellees the amounts earned by them and due under the contract. The complaint concluded with a prayer for judgment in the amount of $41,647.57 with interest.

Appellant's amended answer denied that the instrument sued upon was executed in consideration of the cancellation of the powers of attorney, alleging that prior to its execution, the powers had been revoked and the bonds returned pursuant to revocation. He further denied that appellees had rendered any services under the instrument and alleged that he had revoked it orally on March 11, 1946, and in writing on August 5, 1946, and that $19,184.53 was all he had collected on his bonds by either of said dates.

By way of affirmative defense, appellant's answer alleged that all of the special assessment liens, out of which the

special assessment bonds he owned were payable, were the subject of certain foreclosure suits in which the People sought to foreclose the lien of general taxes, and the village of Westchester, by counterclaim, sought to foreclose the lien of special assessments, much of the property involved being subject to both liens; that as the suits progressed, foreclosure decrees were entered and foreclosure sales carried out; that the proceeds of the sales were allocable to the general tax liens and special assessment liens on the basis of their respective delinquency per parcel and, in turn, the proceeds of sale allocable to the special assessment liens were distributable by the village *pro rata* to the total special assessment delinquency as to each parcel; that appellee Knight Blanchard represented that he had made a thorough study of the bonds and the parcels of real estate out of which they were payable; that he represented to and agreed with appellant that if appellant would furnish money with which to bid at foreclosure sales, Knight Blanchard would so place and fix the bids that appellant would get a return of fifty per cent of the amount bid when distribution was made by the village; that it was in reliance upon such representations that the contract of January 11, 1945, was entered into, and that appellees' determining and making the bids were the services contemplated by the contract. Continuing, the answer alleges that appellant turned funds over to Blanchard to bid at sales, but the return from the bids made ranged only from ten to thirty per cent, and, in some instances, to no return at all for the reason that appellant's money was bid on lots which did not secure the bonds he owned; that appellees' conduct in this respect was in violation of their agreement and duties and caused appellant to suffer serious financial loss. The answer also charges that Knight Blanchard used the money in making bids in such a way as to increase the return on bonds of other bondholders secretly represented by appellees, thereby increasing appellees' compensation from the other bond-

holders, such conduct being a breach of trust defeating any right to compensation otherwise payable by appellant.

By their reply, appellees traversed the defenses raised by appellant, alleged that appellant was fully advised of their representation of other bondholders, denied that they were in any way guilty of a breach of trust and alleged additional facts purportedly showing performance under the contract sued upon.

The contract, or instrument, referred to in the pleadings, was attached to the complaint. A preamble recites appellant's ownership of approximately $600,000 par value Westchester bonds, the existence of powers of attorney in appellees with respect to approximately $300,000 of said bonds, and the desire of appellant that the powers of attorney be cancelled and the bonds returned to him. The contract then goes on to provide the following: (1) That the Blanchards herewith cancel and surrender to Lewis all powers of attorney and bonds; (2) that Lewis grant to the Blanchards, or the survivor of them, (and in case of the death of both, to the Blanchard Securities Company,) the sole and exclusive authority to collect the said bonds or receive any funds realized by foreclosure of assessment liens; (3) that the Blanchards, or their successor, "shall receive in full payment for all services rendered or to be rendered in the collection of said bonds or any proceeds of said bonds, fifteen per cent (15%) of all proceeds of said bonds distributed, collected and paid to Lewis;" (4) that the said collection fee shall be due and payable whenever Lewis received any money distributed in liquidation of said bonds; (5) that Lewis shall make the bonds available to the Blanchards upon request, and collections shall be made in the name of the Blanchards as agent for Lewis; and (6) that in the event Lewis disposed of any of the bonds so that they would not be available to the Blanchards for presentation and collection when money was available for distribution in liquidation of the bonds, Lewis never-

theless agreed to pay the Blanchards the fifteen per cent provided above, it being the intent of the parties that Lewis would pay the Blanchards fifteen per cent of all moneys paid on the said bonds to Lewis or his successors. The contract concludes by providing that in the event of the death of Lewis "this agreement is not to be construed as a power of attorney, terminated by death, but is to be construed as a contract of employment, and as such, binding upon the heirs, successors and assigns of said Frank J. Lewis."

It has been necessary to set forth the contents of the pleading and contract in great detail because most of the contentions made here go to a construction placed upon the pleadings by the Appellate Court. In reversing the judgment of the trial court, the Appellate Court predicated its opinion primarily on the proposition that the lower court had committed error in admitting irrelevant evidence in violation of the parol evidence rule and in giving instructions touching upon such evidence. In reaching its result, the Appellate Court construed the instrument sued upon as an agreement settling disputes between the parties and not one of employment. Having reached such a conclusion as to the character and purpose of the agreement, the Appellate Court quite naturally held that anterior statements, conversations, etc., became merged in the written agreement and that the admission of evidence relating to such conversations and statements was in violation of the parol evidence rule. In like manner, the instructions relating to such evidence were held to be erroneous. It is appellant's contention that the unsolicited construction of the agreement injected a new issue into the cause against which he had no opportunity to defend, and that the court's construction is erroneous.

Although appellant presents his argument in many different ways, his main contention reduces itself to a claim that the competency and relevancy of the evidence in this cause, and the propriety of the instructions given, are determined by the issues raised by the pleadings and by the evidence

which is actually within the scope of the pleadings, and that he cannot be deprived of his theory of the case at appellate level by a construction of the contract and pleadings, which was not made an issue in the pleadings. Stated more abstractly, it is appellant's contention that the well-settled rule which requires the parties on appeal to adhere to the theory upon which they presented the case in the trial court operates to limit the scope of review. Such a contention is not without a basis, for we find it stated in 3 Am. Jur., Appeal and Error, sec. 830, that the authorities are agreed on the proposition that a case, on appeal, must be reviewed and decided on the theory on which it was tried in the court below, and that the theory upon which the case was submitted in the trial court should be treated as the law of the case on appeal. While we have been unable to find any direct application of the doctrine last stated in the decisions of this court, we have consistently held that the parties to an action cannot try a case on one theory in a trial court and on another in a court of review. (*Hedlund* v. *Miner,* 395 Ill. 217; *Chicago Title and Trust Co.* v. *De Lasaux,* 336 Ill. 522; *Winnard* v. *Clinton,* 233 Ill. 320.) We believe it logically follows that the reviewing court is, itself, subject to the same limitation.

In determining the theory upon which the case was presented to the trial court, appeal courts will examine the whole record and the briefs of counsel and will construe the pleadings on the theory most clearly outlined by the facts stated and according to their general scope and tenor. (3 Am. Jur., Appeal and Error, sec. 830.) In their brief in this court, appellees contend that under the contract of January 11, 1945, their duties were to cancel the powers of attorney executed by appellant, return to him his bonds, and then collect from the village of Westchester funds allocable to his bonds as they become available, *and nothing further.* (Emphasis appellees'.) This, of course, is the construction placed upon the contract by the Appellate Court.

However, we do not find it to be consistent with appellees' pleadings or the evidence offered in support of their pleadings. In their complaint appellees clearly state that they seek payment of amounts earned by them for time, effort and services expended in securing payment of the bonds under the former powers of attorney and the present contract. The facts show us that the powers of attorney embraced $300,000 in bonds, while the contract relates to $600,000 in bonds owned by appellant. We find it difficult to assume that appellant would agree to pay appellees fifteen per cent of the additional $300,000 in bonds without appellees doing anything further. Indeed, appellees' complaint states without equivocation that their claim is for services rendered both under the powers of attorney and the contract, in contradiction to the contention now made. This portion of the complaint is consistent with the terms of the contract, which provides that appellant shall pay for "services rendered or to be rendered." Another factor to be considered is that the agreement itself states that upon appellant's death it is to be construed as a contract of employment.

Appellant denied liability under the agreement sued upon, denied that services had been performed under the agreement, and alleged affirmatively that the contract was void for want of consideration, and that appellees had so breached their obligations as agent for appellant as to bar recovery for any services they might have rendered in the course of their agency. The record further shows that on appellees' motion the trial court struck those portions of appellant's answer which alleged that the contract was void as a contract of employment for various reasons. Thereafter, appellees filed a reply, pleading specific instances of services rendered and denying any breach of their fiduciary obligations as agents for appellant. We find no contention or plea by appellees, throughout their pleading, that the contract sued upon was a settlement or compromise agreement

terminating their fiduciary relation with appellant, or that their suit was based on an agreement which excluded the performance of services. On the contrary, appellees pleaded performance of services and took issue on appellant's allegation which raised the question of proper performance of services. In like manner, we do not find that appellees' evidence was directed to a theory that the contract was one of settlement, but, rather, they sought to show performance of services and fidelity to their fiduciary obligations to appellant.

From the pleadings, the trial court's rulings thereon and the record as a whole, we believe it is quite apparent that the theory upon which appellees presented and tried their case in the trial court was that the instrument sued upon was a contract of employment. The record likewise shows that the pleadings made an issue of whether appellees were unfaithful servants and thereby precluded from recovering compensation to which they would have been entitled but for the breach of trust to their principal. This being true, evidence properly relating to the issue was admissible and the instructions setting forth the law which the jury should apply if it resolved the factual issue for appellant were properly given. There can be no question that a party to a cause of action is entitled to instructions which apply directly and specifically to his theory of the case where there is evidence tending to prove those facts. (*Thomas* v. *Chicago Embossing Co.* 307 Ill. 134.) The same conclusion must be reached as to the evidence and instructions relating to the more general issue formed by the pleadings as to whether the relationship of principal and agent existed between the parties.

Appellees chose to try the case on the issues made in the trial court under their theory that the instrument sued upon was a contract of employment. No intendment can be indulged in that appellees had not stated their cause as strongly as it was possible to state it, especially

when they failed to avail themselves of the opportunities open to them in the trial court to amend their pleadings to embrace a different theory. Accordingly, it is our opinion that the trial court did not err in admitting the evidence of appellant properly relating to the issues formed by the pleadings.

Nor can such evidence be construed as being in violation of the parol evidence rule. The evidence in question did not seek to alter the terms of the written instrument between the parties, but sought to show nondisclosures, misrepresentations and violations of the fiduciary relation between the principal and the agents which voided their agreement. The law of agency and the declared public policy of this State strictly require honesty and loyalty to the interests of the principal on the part of an agent. (*Steinmetz* v. *Kern,* 375 Ill. 616; *Rieger* v. *Brandt,* 329 Ill. 21.) This obligation prohibits an agent from acquiring personal interests adverse to those of his principal and from dealing independently of the interests of his principal to his personal gain in the subject matter of the agency, on the sound grounds that such activities will necessarily tempt the agent to swerve from full adherence to his fiduciary obligations, to abandon the interests of his principal in favor of his own, and even to advance his personal ambitions to the detriment of his principal. (*Chicago Title and Trust Co.* v. *Schwartz,* 339 Ill. 184; *Lerk* v. *McCabe,* 349 Ill. 348.) The law is clear that such adverse interests or self-dealing will bar the agent from any recovery for his services unless the agent completely discloses the extent of the adversity of interest and the principal, having such information, consents thereto. (*Fox* v. *Simons,* 251 Ill. 316; *Voorhees* v. *Campbell,* 275 Ill. 292.) To enforce this principle of law, the law imposes upon the agent a burden of proving full honesty and loyalty, or, in the alternative, full disclosure and subsequent ratification by the principal, whenever any question relating to the faithfulness of the agent

arises in an action brought by an agent against his principal. (*McCord* v. *Roberts,* 334 Ill. 233; *Fox* v. *Simons,* 251 Ill. 316; *Wadsworth* v. *Adams,* 138 U.S. 380, 34 L. ed. 984; *Beach* v. *Wilton,* 244 Ill. 413.) Looking to these principles of law with relation to the conduct of fiduciaries, we must conclude that the evidence of derelictions on the part of appellees, introduced by appellant to vitiate the contract, did not violate the parol evidence rule and was properly admitted, and the instructions relating to such evidence were properly given.

We see no beneficial purpose that can be served by detailing the evidence introduced in support of the issues raised. We have examined it carefully and are of the opinion that the verdict of the jury in favor of the appellant is not against the manifest weight of the evidence.

It is our opinion, therefore, that the judgment of the Appellate Court reversing the judgment of the trial court entered on the verdict was not in accordance with law. It is hereby reversed and the judgment of the superior court of Cook County is affirmed.

*Appellate Court reversed; superior court affirmed.*