RAY DAWSON *et al.*, Plaintiffs-Appellees, v. EDWARD J. DUNCAN, Defendant-Appellant (Eldon L. Fuchs *et al.*, Defendants).

Fourth District   No. 4—85—0695

Opinion filed June 19, 1986.—Rehearing denied July 17, 1986.

J. Steven Beckett, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

534

Greaves, Lerner & Kirchner, of Champaign, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

The plaintiffs filed a petition in the circuit court of Champaign County seeking to register a judgment against the defendants obtained in the Phillips County circuit court of Phillips County, Arkansas, under the provisions of the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1983, ch. 110, pars. 12—601 through 12—617). Defendant Duncan, the sole appellant here, answered the petition and set up certain defenses: (1) that he had insufficient contacts with the State of Arkansas to cause him to be subject to its long-arm jurisdiction; (2) that his signature on the note which was the subject of the judgment was a forgery; (3) that the attorney who appeared for him in Arkansas was not authorized to do so by him or, alternatively, that the Arkansas attorney had been employed for him by one who had a conflict of interest; and (4) that improper service was made upon him at the time of the filing of the Arkansas complaint.

Thereafter, plaintiffs filed motions for summary judgment against defendants Eldon Fuchs, Marc Fuchs, Howard Lessman, and Duncan. In response Duncan filed a motion to continue the hearing on summary judgment as to him and to consolidate the registration action with another such action growing out of the same transactions and then pending in the circuit court of Champaign County. By appropriate orders the trial court registered the Arkansas judgment and entered summary judgment against Eldon Fuchs, Marc Fuchs, and Howard Lessman. No appeal has been taken from those orders by those defendants. Upon a suggestion as to bankruptcy of Lessman, the trial court vacated the orders as to him.

Still later, after a continued hearing, the trial court entered summary judgment as to Duncan, who then withdrew his motion to consolidate. After his motion to reconsider was denied, this appeal followed. On appeal Duncan raises two issues: (1) whether there were issues of material fact which precluded the entry of summary judgment as to him, and (2) whether it was an abuse of discretion for the trial court to enter summary judgment before he had completed his requested discovery.

A brief recapitulation of the facts is necessary to an understanding of the issues. Duncan is a Roman Catholic priest and serves as director of the Newman Foundation on the campus of the University of Illinois. He became acquainted with defendant Marc Fuchs (Marc) when Fuchs served as a counselor at Newman. Marc afterwards be-

came a lawyer and practices with his father, defendant Eldon Fuchs, at Farmersville, Illinois. The friendship between Duncan and Marc has continued since Fuchs graduated. From time to time they would meet and have dinner together.

In the spring of 1981 Marc told Duncan about certain real estate investments that he and his father had made and Duncan indicated that he would be interested in becoming an investor in such ventures and sent to Marc a rough financial statement.

In July 1981 Marc received a proposed real estate purchase contract from David Johnson, a Memphis, Tennessee, attorney, who had participated in prior real estate ventures with Marc and his father. The contract concerned 4,088.3 acres of land in Marion County, Mississippi, to be sold for $4,292,715. It named Johnson, as trustee, as the seller. It was understood that Johnson would have a 20% interest. Marc executed the contract on behalf of the buyers who were to be himself, his father, Howard Lessman (a retired farmer and long-time friend, client, and business associate of Eldon and Marc Fuchs), Thanad Shay (Eldon Fuchs' son-in-law and a physician in Peoria), and Duncan.

In due course the Germantown Trust Savings & Loan Association of Germantown, Tennessee, made a loan commitment of $3,150,000, or $630,000 each to the five investors. These were to be separate loans but all were contained in one commitment letter, which was sent to Marc. The letter was executed by Eldon Fuchs, Marc Fuchs, and Howard Lessman; in addition, Marc signed for Shay and Duncan by signing their names "by Marc E. Fuchs, his attorney in fact." Marc had no written power of attorney.

The transaction was closed on March 10, 1982, in the office of Jimason Daggett, the plaintiffs' attorney, in Marianna, Arkansas. Three promissory notes were involved: (1) $3,150,000 to the order of Germantown Trust Savings & Loan Association, (2) $600,000 to the order of the Dawsons, plaintiff-vendors, and (3) $426,090 to the order of David Johnson. Duncan's signature appeared on all three notes, as well as on a deed of trust and security agreement and a closing statement. However, only two buyers were present at the closing, Eldon Fuchs and Howard Lessman. The other signatures, those of Marc, Shay, and Duncan, were placed on the instruments by Marc in his law office in Farmersville.

About six months later a modification of the loan agreement was made. Johnson sent the modification agreement to Marc; it required the signatures of the five investors. Eldon Fuchs, Marc, and Howard Lessman signed. Neither Shay nor Duncan signed although their sig-

natures appear on the document. Duncan claimed that he did not authorize anyone to sign for him on either the original documents nor on the modification.

Efforts were made to sell the property, but they appeared unavailing. At one time Marc signed a contract for all five investors as sellers and Emil Verban of Lincoln, Illinois, as buyer, but no closing was ever held.

Other than approximately $160,000 paid at the time of the modification agreement, no payments were made on any of the notes. On April 7, 1983, Jimason Daggett, plaintiffs' attorney, sent to each of the five investors a demand letter, stating that the Dawson note was in default and if it was not paid within 10 days, collection proceedings would be commenced. The letter was sent via certified mail, return receipt requested. On April 11, 1983, Marc called Duncan's office and left a message that he would be receiving a certified letter. Marc stated that Duncan was not to be concerned about it and that he, Marc, would take care of it.

On May 16, 1983, plaintiffs filed suit on their $600,000 note in the circuit court of Phillips County, Arkansas. Duncan was served with summons, whereupon he consulted with Marc and told him that the signature on the attached note was not his. As with the Jimason letter, Marc told him that he would take care of the matter and not to worry about it.

Eldon Fuchs retained Raymond Galloway, an attorney of Helena, Arkansas, to represent all defendants in the suit. Galloway never contacted Duncan, but filed an answer denying liability after entering his appearance on behalf of all the defendants. Ultimately, judgment was entered against all the defendants in the Arkansas court on the note.

Sometime later, on March 19, 1984, an attorney for the Germantown Trust Savings & Loan Association notified the five investors that the loan to that institution was in default, that an administrative foreclosure had occurred in August 1983 with a deficiency of $2,389,138, and that demand was made upon all of them jointly and severally for that sum.

As set forth above, the $600,000 judgment was registered in this State by the circuit court of Champaign County. The trial court found that service of process on Duncan was proper, that there was no showing of fraud, and that all the matters raised in Duncan's answer could have been presented to the Arkansas court before judgment was entered there. The court concluded that since there was no fraud and since the Arkansas court had jurisdiction, its judgment was entitled to full faith and credit. The court further concluded that there

were no genuine issues of material fact and therefore entered summary judgment for the plaintiffs.

■■■ Section 12—602 of the Uniform Enforcement of Foreign Judgments Act (Act) (Ill. Rev. Stat. 1983, ch. 110, par. 12—602) provides for the registration of foreign judgments in this State. Section 12—608 of the Act (Ill. Rev. Stat. 1983, ch. 110, par. 12—608) provides for the presentation of defenses, setoffs or counterclaims. However, there are limitations on the latter. A judgment debtor may defend against a foreign judgment sought to be enforced in this State, but not on grounds which could have been presented to the foreign court in which the judgment was rendered. (*Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 385 N.E.2d 702.) An Illinois court will not rehear a case on the merits because under principles of *res judicata* the nature and amount of the judgment, together with all defenses which could have been raised, are foreclosed. Full faith and credit demands this approach. A collateral attack upon a foreign judgment may not be made except for the defenses of fraud in its procurement (extrinsic fraud) or lack of jurisdiction in the foreign court. *Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 385 N.E.2d 702; *Southern Bell Telephone & Telegraph Co. v. Woodstock, Inc.* (1975), 34 Ill. App. 3d 86, 339 N.E.2d 423.

Duncan maintains that both of these defenses are available to him: (1) that he did not have sufficient contacts with the State of Arkansas so as to submit to its jurisdiction, and (2) fraud existed because the judgment was based upon his forged signature on the note.

The Arkansas statutory provision for service on out-of-State defendants provides in part:

"(1) Any cause of action arising out of acts done in this State by an individual in this State or by an agent or servant in this State of a foreign corporation may be sued upon in this State, although the defendant has left this State, by process served upon or mailed to the individual or corporation outside the State." (Ark. Stat. Ann. sec. 27—339.1(1) (1979).)

The Arkansas Rules of Civil Procedure provide:

"(e) Other service: Whenever the law of this State authorizes service outside of this State, the service, when reasonably calculated to give actual notice, may be made: * * *

(3) By any form of mail addressed to the person to by [be] served and requiring a receipt signed by the addressee or the agent of the addressee; * * *." Ark. Stat. Ann. app. tit. 27 (Supp. 1985) (Rule 4(e)(3)).

■ The record is clear that both of these provisions were com-

plied with. Duncan received both the Daggett certified letter and a summons. In fact, he consulted Marc Fuchs about both of them and was told in each instance that the matter would be taken care of and not to worry about it.

The "minimum contacts" doctrine was propounded by the Supreme Court in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154. In *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240, the court explained what it considered to be "minimum contact" by stating "that there be some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

The question then becomes whether Duncan purposefully performed any acts in or concerning Arkansas which justified the issuance of the letter and the summons in the first place. We believe that there were at least two (1) his signature on documents relating to the sale of real estate, the closing of which took place in that State, and (2) the appearance on his behalf of an attorney in the Arkansas court.

Duncan relies upon *Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 302 N.E.2d 382, but it is readily distinguishable. In that case a New York real estate broker obtained a judgment in a New York court against the defendant, the owner of a building in Chicago and a resident of Illinois. The judgment was for a real estate commission for obtaining a tenant for the building. The evidence showed that all of the negotiations were conducted by telephone or by mail. The Illinois court refused to register the judgment because the defendant transacted no business in New York and performed no purposeful act there. In the instant case the real estate closing was conducted in Arkansas and Duncan was a party thereto, albeit he claims fraud and forgery. There was a purposeful act within the forum State.

What is more significant is that Galloway entered his appearance on behalf of Duncan in the Arkansas court. Duncan argues that the underlying details of this relationship must be examined and that they raise a question of material fact. We do not agree.

The older case of *Welch v. Sykes* (1846), 8 Ill. 197, is relied upon for Duncan's argument. In that case it was sought to register a Maryland judgment in this State. The defendant claimed that the attorney who purported to represent him in Maryland had no authority to do so. Our supreme court held that the defendant should be permitted to establish that lack of authority. The court stated that even if the record showed an appearance by attorney for the defendant, that is only *prima facie* evidence of the attorney's authority and the defendant is

at liberty to disprove it.

Duncan stated in a discovery deposition that he knew he was being sued in Arkansas after he received the notice and the complaint and that he knew Marc Fuchs was taking care of it. When asked, "But you knew that someone would have to respond to that lawsuit for you?" he answered, "I suppose that's implicit." When asked, "So you knew that an attorney would represent you down there?" he answered, "I would say yes." On May 20, 1983, Marc sent a letter to defendant which stated, in part, "you have probably received a summons regarding the Mississippi property. We are handling this and will file a countersuit within the prescribed time period of 20 days."

In light of this evidence, it appears that Duncan did, in fact, authorize Marc to handle the matter and to retain counsel to represent him. This situation, therefore differs from that in *Welch*, where the defendant might have been able to prove that he did not authorize the attorney to appear for him in the foreign court.

Notwithstanding the foregoing, Duncan argues that an attorney-client relationship can never be established by a third party and cites *Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70; *Greer v. Ludwick* (1968), 100 Ill. App. 2d 27, 241 N.E.2d 4; and *Scharlau v. Lombard State Bank* (1935), 278 Ill. App. 504, for that proposition. We do not so understand those authorities. *Zych* recognized that the relationship can be created by a third party who has authority to act. *Greer* indicated that the acts of the third party may be ratified by the principal. *Scharlau* held only that the relationship cannot be created by the attorney alone or by the attorney and the third party who lacks authority to act.

We believe that the instant case is more like *Hannah v. Hannah* (1968), 94 Ill. App. 2d 372, 236 N.E.2d 783. There the defendant signed an entry of appearance and consent to an immediate hearing in a divorce action. The document left blank the name of the attorney who was to be selected to represent him, and the defendant left it with the plaintiff's attorney. The court found that the defendant intended and expected the plaintiff's attorney to select counsel for him and to insert his name. In our case it is clear from the deposition testimony set forth above that Duncan knew and expected that Marc Fuchs would select an attorney for him in the Arkansas action. Marc's authority was not explicit, but in Duncan's own words it was "implicit."

Duncan next argues that Marc had a conflict of interest with him and thus lacked authority to retain an attorney. While such a conflict, if established, might lead to litigation between Duncan and

Marc, it has nothing to do with Marc's authority to retain counsel. *Blanchard v. Lewis* (1953), 414 Ill. 515, 112 N.E.2d 167, cited by Duncan, is inapposite. That case concerned a suit by broker-agents against the owners of certain securities. The principal issue was the faithfulness and loyalty of the brokers. If there were a conflict of interest, that is another defense which should have been raised in the Arkansas court.

We conclude that all of Duncan's arguments concerning the jurisdiction of the Arkansas court are without merit.

Duncan next argues on the question of fraud, claiming that since he never signed the note, the signature was not authorized and was therefore a forgery. He concludes that the Arkansas judgment was then based on fraud in its procurement, thus satisfying the second test in *Thompson* and *Southern Bell.*

Illinois courts have distinguished between two types of fraud: (1) fraud which prevents the foreign court from acquiring jurisdiction or merely gives it colorable jurisdiction, and (2) fraud which occurred after the foreign court acquires jurisdiction, such as false testimony or concealment. It is only the former which renders the judgment void. (*Schwarz v. Schwarz* (1963), 27 Ill. 2d 140, 188 N.E.2d 673.) Clearly any fraud as is alleged in the instant case falls within the second category. Duncan could have defended on the basis of fraud in Arkansas, and he did not.

■ Since the Arkansas court had jurisdiction and since there was no fraud in the procurement of the judgment, there is no defense under the Illinois Act against the registration of the judgment. Further, there was no genuine issue of material fact in connection with these issues; summary judgment for the plaintiffs was proper.

Duncan's second issue is that the trial court committed error in entering summary judgment before he had completed his discovery. He claims that he needed the depositions of Marc Fuchs, Eldon Fuchs, David Johnson, and Raymond Galloway.

As with the questions of jurisdiction and fraud discussed above, any information obtained from these sources would necessarily affect the original action in Arkansas, not the registration of the judgment in this State. If Duncan has some kind of action against these parties, he will be free to pursue it, but it should not delay the plaintiffs' claim. Furthermore, as explained above, the basis of the summary judgment was Duncan's own deposition testimony and the admissions he made therein. Nothing that any of the potential deponents could say would alter those admissions. Basically, Duncan is again maintaining fraud—a forged note—but all such claims should have been pre-

sented to the Arkansas court at the time of the entry of the original judgment.

*Hanes v. Orr & Associates* (1977), 53 Ill. App. 3d 72, 368 N.E.2d 584, cited by Duncan, is distinguishable. There the appellate court reversed a summary judgment because it was entered before the plaintiff had completed discovery. The question was whether full control over a loaned employee had been surrendered and the appellate court found that there was a genuine issue on this point. The difference between *Hanes* and the instant case is that there the primary litigation was involved. The only questions here are jurisdiction and extrinsic fraud. The uncompleted discovery would not establish either of those issues. Rather, it seems that it might establish fraud upon Duncan by some of the other defendants.

For all the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

MORTHLAND and SPITZ, JJ., concur.